No.——

First Circuit

---

## STEVENS v. ILLINOIS CENT. R. R. CO.

(Mar. 8, 1927.   Opinion and Decree.)
(May 3, 1927.   Rehearing Refused.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Pleading—Par. 62; Railroads—Par. 64, 80.**

In view of Act 12 of 1924, the fact that one fails to stop, look and listen before crossing a railroad track is not negligence per se and an exception no cause of action on that ground will be overruled.

2. **Louisiana Digest—Automobiles—Par. 5, 7 (b), 8.**

The negligence of an automobile driver who did not stop, look and listen before crossing a railroad track where the accident could have been avoided had she done so, is clearly established.

3. **Louisiana Digest—Railroads—Par. 60, 62.**

Where the evidence in a crossing accident case shows that although there were box cars parked near the crossing yet the railroad used all alarm signals required by law, the railway is not negligent.

4. **Louisiana Digest—Automobiles—Par. 4.**

The driver and owner of an automoboile owes the duty of protecting her in-invited guests from all harm.

**5. Louisiana Digest—Marriage—Par. 97.**

In view of Article 2315 of the Civil Code and Act 186 of 1920, damages suffered by the wife are her separate and personal property and her husband cannot recover for them.

**6. Louisiana Digest—Damages—Par. 105.**

Fifteen hundred dollars is sufficient quantum of damages for personal injuries which partially paralyzed the right side and affected one of the eyes of a lady 60 years of age.

Appeal from the Parish of Tangipahoa. Hon. Columbus Reid, Judge.

Action by Mrs. Nancy Stevens, et al., against Illinois Central Railroad Company, et als.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

A. W. Spiller, of Hammond, attorney for plaintiff, appellee.

Edward Rightor, of New Orleans, attorney for defendant, appellant.

Mrs. Mattie D. Tycer, Carroll Buck, of Amite, for defendant, appellee, Illinois Central Railroad.

LECHE, J. Mrs. Nancy Stevens was invited by Mrs. Mattie D. Tycer to accompany her, in her Ford sedan, on a trip from the latter's home to the town of Hammond. The road upon which the journey was made, crosses the main line of the Illinois Central Railroad at Tickfaw, from east to west, and then, more or less, parallels the railroad tracks in a southerly direction down to the town of Hammond. The two ladies, after their visit to Hammond, were returning along the same road, and when crossing the railroad tracks at Tickfaw, met with the unfortunate accident that gave rise to the present litigation. The automobile, which belonged to Mrs. Tycer and was being driven by her, collided with a southbound freight train of the railroad company, was badly wrecked, and Mrs. Stevens, the guest of Mrs. Tycer, was seriously injured. In this suit Mrs. Stevens and her husband make claim for damages both against Mrs. Tycer and the railroad company.

The District Court rendered judgment in favor of plaintiff, Mrs. Stevens, and against Mrs. Tycer but rejected the demand of plaintiffs against the railroad company. Both of the plaintiffs and Mrs. Tycer have appealed from that judgment.

Plaintiffs in their petition charge that the collision resulted from the fault and through the joint negligence of both the railroad company and Mrs. Tycer. They allege that Mrs. Stevens was seriously and permanently injured, and they ask for judgment against the defendants in solido, for the sum of fifteen thousand dollars in favor of Mrs. Stevens and in the sum of five thousand six hundred dollars in favor of her husband, John Stevens. The trial judge's finding is in favor of Mrs. Stevens and allows her fifteen hundred dollars against Mrs. Tycer.

Before answering to the merits of plaintiff's petition, Mrs. Tycer excepted on the ground that plaintiff's allegations failed to show a cause of action as against her, in this, that the only fault charged to her, is her failure to stop before crossing the railroad tracks and that such failure did not constitute negligence per se. In support of her plea, she cites the case of Aymond vs. Western Union, et al., 151 La. 187, 91 So. 671, where it was held that the rule to stop before crossing a railroad track, does not require one to come to a position of absolute immobility. This construction of the rule says the court, is based on common sense and common practice. But

where it appears that a position of absolute immobility would have enabled the automobile driver crossing a railroad track, both to see and to hear an approaching train, we have no doubt that the court would not sanction the construction of the rule as applied in the Aymond case.

Act 12, p. 16, of 1924, adopted more than two years after the rendition of the decision in the Aymond case, has however, removed all doubt on this subject. The title of the Act says: "full stop" and the provisions of the same require automobile drivers to stop not less than 10 nor more than 50 feet from the nearest track. But admitting that one must come to a "full stop" before driving his automobile across a railroad track, Mrs. Tycer contends nevertheless, that the proviisons of the Act No. 12 of 1924, only apply to actions by drivers of automobiles for damages against railroads. She was driving the automobile in this case, but she is not suing the railroad company for damages, and therefore, she contends, plaintiffs cannot invoke the railroad stop law against her. We see nothing in the provisions of the Act to justify such a narrow construction of its object and purposes. The announced purpose of the statute is to prevent collisions between railroad trains and motor driven vehicles and the question as to what may constitute negligence on the part of the driver of an automobile, is expressly not restricted to a violation of the provisions of the Act but is left to the legal discretion of the jury or of the court. The pertinent clause in the Act is couched in this language:

"In the trial of all actions to recover personal injury or property damages sustained by any driver of such motor driven vehicles by collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions of this Act, the question of whether or not the said violation was the sole or proximate cause of the accident and injury shall be for the jury to determine regardless of the penalizing feature of this Act: That the violation of this Act shall not affect recovery for damages and the question of negligence or the violation of this Act shall be left to the jury, and the contributory negligence statutes of Louisiana shall apply in these cases as in other cases of negligence."

The evident purpose of the Act is to protect from harm, and to secure the safety of all persons, be they passengers in automobiles or drivers of automobiles, and the regulations therein contained with regard to the manner of approaching and going over railroad crossings, are merely in furtherance of that end, and are not designed solely to establish the rights and responsibilities of drivers of automobiles as against railroad companies. The negligence of the driver of an automobile who fails to stop before crossing a railroad track, is not only a defense which may be pleaded by the railroad company, but from the expressed purpose of the Act, furnished ground for damages against such driver in favor of the occupants of the automobile who might be injured by his failure to stop.

For these reasons we believe the trial judge properly overruled Mrs. Tycer's exception of no cause of action.

The facts in this controversy are not seriously contested. The road from Hammond, upon which Mrs. Tycer and Mrs. Stevens were travelling, is along the west side of the Illinois Central tracks, contiguous to the railroad right of way and runs north and south. The occupants of the automobile could see the tracks of the railroad for a considerable distance, probably several miles, to the north and south of the Tickfaw crossing. When the automobile was turned to the east to make the crossing, it was still some forty or fifty feet

and perhaps more, from the nearest rails. Here there is a switch track besides the two traffic tracks over the road bed. Mrs. Tycer whose bounden duty it was, to stop, look and listen, acknowledges that she did not stop and she says that her view to the north was obstructed by three box cars which were on the switch track and that she slowed down, kept going across and only saw the southbound freight train when it was almost on the automobile. She at once steered and turned to the south, on the road bed, but was struck a glancing blow from the rear left by the train. The automobile was partially wrecked and Mrs. Stevens was seriously injured.

The three box cars and the telegraph poles did interfere to some extent with a clear view of the railroad tracks towards the north. But these obstructions could not completely conceal the incoming freight train. It is established beyond doubt that the usual alarm signals were given by the engineer in control of the locomotive. Whistles were blown, the bell was ringing, the noise of the rolling train could be heard, the smoke of the locomotive and in fact the whole train could have been seen by Mrs. Tycer, if she had used the least diligence and caution.

The purpose of stopping an automobile before crossing a railroad track, is to enable the occupants of the automobile to see and hear. The greater the difficulty of seeing and hearing, the greater the necessity of stopping, looking and listening. Barnhill vs. T. & P. Ry. Co., 109 La. 44, 33 So. 63; Ortolana vs. Morgan's L. & T. R. R. & S. S. Co., 109 La. 902, 33 So. 914; Sutton vs. Lee Logging Co., 121 La. 557, 46 So. 649; Perrin vs. N. O. Terminal Co., 140 La. 819, 74 So. 160. Mrs. Tycer did not stop and for that reason, did not see and could not hear. Her negligence is estab-lished beyond doubt by the evidence in this record.

It is equally well known that there was no negligence on the part of the railroad company. There was no death trap at this crossing. The box cars were parked, where the company had the right to park them for the benefit and convenience of its shippers. The sign post was located at the crossing as required by the statute and the alarm signals were given in due time. We therefore fail to see any reason to apply in this case, the decisions in Holstead vs. V. S. & P. R. R., 154 La. 1099, 98 South. 679, and Draiss vs. Payne, 158 La. 652, 104 South. 487.

We agree with the learned trial judge that the collision was due entirely to the fault and negligence of Mrs. Tycer and not to any fault on the part of the railroad company.

The plaintiff, Mrs. Stevens, was a guest by invitation of Mrs. Tycer, and Mrs. Tycer owed her the duty of protecting her from harm. Cristadoro vs. Hon. Behren's Heirs, 119 La. 1028, 44 So. 852; Gray vs. Foundation Company, 151 La. 7, 91 So. 527.

The plaintiff, Mrs. Stevens, was allowed damages against Mrs. Tycer in the sum of fifteen hundred dollars. She complained of the insufficiency of this amount. John Stevens, her husband, also complains of the ruling whereby his claim was rejected.

The reason why the husband, John Stevens's claim was rejected does not appear from the record, nor is it argued in brief of either counsel. In plaintiff's brief, it is said that Mrs. Stevens incurred an actual expense of approyimately six hundred dollars for medical attention, hospital bills, etc., and that yet the court failed to award him this item of expense. According to the decision in LaGroue vs. City of New Orleans, 114 La. 253, 38 So. 160, he had the

right to join in his wife's suit for damages. Of course, he has no interest in the damages suffered by his wife on account of her injuries. These damages are her separate and personal property. Act 186, p. 304 of 1920. But he could, according to that decision, recover in the suit by his wife the losses and expenses which he incurred for medical attention to his wife. The finding of the trial judge is nevertheless correct on the merits of Mr. Steven's claim. In his testimony Mr. Stevens says he had to borrow five hundred and seventy-five dollars from Mrs. Tycer, and on being asked the leading question whether that money was spent for Mrs. Stevens, he answered, "yes". He gives no details as to how this sum was spent and we do not believe that this testimony is sufficient to serve as a basis for a judgment in his favor.

As to the quantum of damages fixed by the District Judge in favor of Mrs. Stevens, we see no reason to increase the amount. Mrs. Stevens is over sixty years of age, her husband says that she is partially paralyzed on the right side and that one of her eyes was affected by the injuries which she received. It is difficult to say to what extent she is thereby affected. We have no doubt the trial judge exercised proper legal discretion in making his estimate of damages, and we have no reason to alter his finding.

For these reasons the judgment appealed from is affirmed.