## PRICE v. TARVER et al.
### No. 4415.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

John C. Hollingsworth, of New Orleans, and W. E. McBride and A. K. Goff, Jr., both of Ruston, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellee.

MILLS, Judge.

At about 5 o'clock in the afternoon of June 9, 1931, defendant F. H. Tarver, his wife, and six children they had taken on a fishing trip, were returning to Ruston from beyond Monroe, in his Pierce-Arrow sedan. He was on the front seat with his wife, who was driving the car, the children occupying the back and folding seats. They had reached a point about 9 miles from Ruston on the Dixie-Overland Highway when they overtook a Ford sedan, belonging to Mrs. Lucy Buie Price, being driven by Mrs. J. J. Humble. Mrs. Price was seated beside the driver, while Mrs. H. W. Blanks and the 14 year old daughter of Mrs. Price were on the back seat. The Ford was traveling at a speed of from 30 to 35 miles per hour. It was on the right side of the road with the left wheels slightly over the black line in the center of the pavement.

Desiring to pass, Mrs. Tarver sounded her horn several times. Though the driver of the Ford did not hear these signals and did not indicate that she heard them by cutting to the right, Mrs. Tarver pulled over to the left, there being ample room on the 18-foot highway, and started to pass the Price car. When she considered that she had progressed far enough ahead to safely do so, but without looking back to make sure, she cut back to the right-hand side of the road across the path of the oncoming Ford. As she did this, all of the occupants of the Pierce-Arrow heard a noise from the rear of their car which they variously describe as a "click," or as if a rock had been thrown up against it. Afterwards, a scratch and dent were found on the rear right fender of the Tarver car, while a hub cap had been knocked off the left front wheel of the Ford.

Though there is some testimony that the driver of the Ford caused the impact by cutting to the left just as the other car was passing, that contention is not borne out by the physical facts in the case nor by the weight of the testimony. We are satisfied, as was the trial judge, that Mrs. Tarver miscalculated her distance and cut over too soon. The situation was not complicated by the presence of any other cars going in either direction. Mrs. Tarver had ample room to pass and no reason whatever for cutting over so soon. She was plainly negligent in so doing.

Act No. 296 of 1928, in section 14, provides: "The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle."

Diebel v. Bertucci, 19 La. App. 412, 140 So. 515.

As the impact caused no appreciable jar to the heavier car, Mrs. Tarver did not realize that she had hit the Ford until one of the children who had looked back cried out that something was happening to the car they had passed. She then immediately stopped and, with the others in her car, went to the assistance of its occupants.

When the Price car was struck on its left front wheel, Mrs. Humble, its driver, lost control. It swerved and wobbled from side to side finally turning over in the ditch on her right. The proximate cause of this loss of control was the striking of the front wheel of the Ford by the right rear fender of the Tarver car.

Mrs. Price, Mrs. Humble, and Mrs. Blanks each sued separately for damage and injuries they sustained. The cases were consol-

idated for trial and argument only. Mrs. Price, plaintiff in the present suit, a widow, 47 years of age, was engaged in running an apartment and rooming house in Ruston. Her demand for $12,352 is made up of a claim for $5,000 for pain, suffering, and shock; $5,000 for permanent injury and disability; and a balance of $2,352, made up of many items, such as hospital expenses, damage to the car and to her clothing, pay of nurses, etc. In the district court she was allowed a lump sum of $6,825.23. From this judgment defendant has appealed. Plaintiff has answered the appeal praying that the judgment be increased to the amount sued for.

■ Besides the severe shock, plaintiff's injuries consisted of a very bad comminuted fracture of the anatomical neck of the humerus in the left arm near the shoulder joint, and general contusions and lacerations all over her body; a concussion of the brain and doubtful fractures of both sides of the skull. Her only permanent physical injury is an impairment of the use of the left arm to the extent, as she expresses it, that she cannot button her dress in the back with that arm. Because of the nature of the break, her arm was placed in a steel frame that, for a period of eight or nine weeks, held her upper arm at right angles to her body and her forearm at right angles to her upper arm. After the removal of this brace, it took her two more weeks to get her arm down into a natural position. During all this time she suffered excruciating pain. In addition to this, she necessarily was greatly shocked by the accident. The physicians testified that they obtained a better union of the break in the humerus than they expected; that there is now perhaps a 10 per cent. disalinement and some permanent loss of function in the left arm. Her injuries and suffering were complicated by the fact that several weeks prior to the accident her left breast had been completely removed for a cancerous growth. While the wound due to this operation had healed, it was still exceedingly tender. During her convalescence from the injuries received in the collision, she had her right breast removed for a similar reason.

In determining the quantum of damages to be allowed, we have examined the decisions of this court to ascertain the amount awarded in cases similar to the one before us. We find in Weinfield v. Yellow Cab Company, Inc., 10 La. App. 313, 120 So. 420, where the humerus in plaintiff's right arm was broken just at the point of the shoulder, where plaintiff suffered brush burns, two broken teeth and numerous contusions, being confined in bed for about a week, he was awarded $2,500.

In Goldmand v. Yellow Cab Co., Inc., 17 La. App. 450, 134 So. 351, for a contusion and swelling of the shoulder joint and fracture of the shoulder blade, the fracture extending from the upper border downward into to the body of the blade towards the shoulder joint, $1,000 was allowed.

In Anderson v. Hormel & Company, 18 La. App. 398, 136 So. 906, for two fractures of the left arm, one between the shoulder and the elbow, being especially severe and painful, where other injuries were received about the body, in the face and mouth, with much accompanying pain and suffering, where plaintiff was operated on seven different times for the serious arm fracture, six of which operations had been performed under general anesthesia, the incisions and wound necessitating a daily painful dressing, $3,000 was allowed for pain and suffering. In the same case, where permanent disability to the arm amounted to from 20 to 75 per cent., where the other arm was already seriously impaired, $2,000 was allowed. For general contusions, $350.

In Chapmen v. Moore, 19 La. App. 566, 141 So. 431, plaintiff, a woman 48 years old, suffered injuries consisting of a fracture of the surgical neck of the right humerus and contusions and brush burns, with a decided impairment of the function of the right arm estimated at 25 per cent. An award of $1,144 was given.

Counsel for plaintiff concedes in his brief that were he only suing for a broken arm, not over $1,500 could be claimed. Though we have not been favored with a written opinion in the case, from the amount of the judgment it is apparent that the trial judge allowed the sum of $6,000 for pain, suffering, and shock, and permanent disability, and $825.23 for the other incidental damages claimed. While we fully realize the extreme pain, suffering, shock, and discomfort that plaintiff suffered, that amount seems to be out of line with amounts awarded in other cases, as indicated above. We think that an award of $1,500 for the disability to her left arm, and $2,500 for pain, suffering, and shock would be more consistent and proper. We have no fault to find with the allowance for incidental damages.

The judgment appealed from is therefore amended by reducing the damages allowed from $6,825.23 to $4,825.23, and as amended, it is affirmed; plaintiff to pay the costs of appeal and defendant to pay the costs in the lower court.