### No. 10,400

### Orleans

---

### BROWN v. LOSCH

---

(April 23, 1928. Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. Louisiana Digest—Damages—Par. 103, 104.

One hundred and fifty dollars damages allowed to a tenant for contusions and bruises suffered by the breaking of a floor of rented premises considered sufficient indemnity.

Appeal from the Civil District Court. Hon. Mark M. Boatner, Judge.

Action by Miss Ella Brown against John J. Losch.

There was judgment for plaintiff and defendant appealed.

Judgment reduced and affirmed.

A. T. Higgins, Max Schamburger, of New Orleans, attorneys for plaintiff, appellee.

M. S. Dreifus, McLaughlin & West, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J.  This case presents a damage suit by a tenant against her landlord for damages for falling through a defective flooring.

The plaintiff alleged that she rented the premises 2721 S. Rampart Street from the defendant at the monthly rent of $8; that on or about September 18, 1924, she fell through the floor of the rear gallery which was in a decayed condition; that both feet and legs went through the floor causing her to fall heavily and producing the following injuries: Lacerations, contusions and bruises of both legs and of the bottom of the right foot, and of the right arm and shoulder, and bruises and sprain of the left hip; that as a result of said injuries, she was confined to bed at her house for three weeks,· and at the Charity Hospital for three months; that she estimates her physical suffering at $1500.

The ·defendant admitted that he had leased the premises to plaintiff at $2 a week; that the plaintiff did not fall through the floor on the rear gallery; that the floor on said gallery was in good condition and had never been broken by any one; that the plaintiff pointed out to defendant a plank extending across a portion of the yard leading from one corner of the gallery to the other, claiming that she had been injured by the breaking of the plank that this plank had been put there without defendant's knowledge, and that if the plaintiff was hurt thereby it was her fault. Further answering, defendant averred' that the plaintiff was five weeks in arrears with her rent and had been ordered to leave the premises on September 15, 1924; that she was a tres-passer and not a tenant at the time of the alleged accident.

There was judgment in favor of plaintiff for Three hundred dollars.

Defendant appealed.

The plaintiff testified that she walked on the gallery and a board broke, and her "right hand leg went through the hole and her knee 'rested' on the nails"; she weighs 210 pounds; they were old boards in a decayed condition; she sprained her right arm and bruised the bottom of her foot, and skinned her right leg "all up." Then her attorney asked her: "What about the shoulder and hip? What about your left knee? What about the shoulder?" She sent for Dr. Carter, her society doctor, who treated her for three weeks at her home; then she visited the Charity Hospital seven or eight times, and was treated by Dr. Magee; she had no bones broken, only "sprains and bruises"; she paid all rent except two weeks; the marks of the nails stayed on· her knee about three weeks, and the scratch on the right leg about one week she did not notice blood on the nails; she was never notified to vacate; the doctor gave her something with which to rub her knee, and a tonic for inward medicine.

Alexander Lopez, a laborer, was at plaintiff's house at the time of the accident; he was sitting in her room talking to her; she left to go to the rear and a few minutes after he heard her "holloa so loud as if she was crazy"; he walked out on the gallery and "the thing had broken loose and her right leg was down and he helped her out"; she showed him the "gash" around her knee she had gotten from falling through; it was bleeding at the time; he visited her about twice a week, she was confined to her room about three weeks.

Dr. Carter did not remember the details of the injury to plaintiff. On February 14, 1925, he wrote the following memorandum which was offered in evidence: "This certifies that I attended Ella Brown for contusion of shoulder, leg and knee, beginning September 17, 1924, until cured."

Dr. Henry C. Magee, of the Charity Hospital, testified that he had only a vague recollection of having treated plaintiff; she complained of pain in the shoulder and knee; there was no visible evidence of injury or of anything else at that time; she came three or four times; she complained of pain and there was nothing to show for it, she had gone to the gynecological clinic which sent her to the other clinic; it is the case when nothing wrong is found.

Mrs. Betta Lorsch testified that she called twice a week on the defendant for rent after the accident; that she was not in bed in the beginning.

The defendant testified that he went to inspect the porch the day after the accident; the lady next door rang him up and told him that Ella Brown was hurt; she came out and pointed out the plank through which she fell; the plank was on the outside of the gallery about eight or ten inches it was no part of the original gallery he does not remember putting it there; this extra plank was about twelve inches from the ground as he measured it he pulled the piece of nail out; there was no blood on the nail.

It is immaterial whether the board which yielded under plaintiff's weight formed a part of the gallery or not, or whether defendant knew of its existence. The fact remains that it was there for the plaintiff's use when she rented the premises, and the landlord is responsible for its defective condition.

The plaintiff paid no doctor's bills, nor did she lose any wages. She sued only for suffering. She suffered no broken bones, "only sprains and bruises," as she says herself. The testimony of the witness Lopez is affected by his close relations to the plaintiff, and his exaggerations when he testified that the plaintiff "holloaed so loud as if she was crazy," that she had a "gash" around her knee, which was bleeding. A gash is defined to be "a long and deep gaping wound." The plaintiff does not claim more than a scratch, and does not mention "blood" or bleeding. Plaintiff's society doctor, Carter, speaks only of "contusion of shoulder, leg and knee." The word "contusion" means a "bruise," a hurt inflicted without breaking the skin, inflicted by a blunt instrument or a fall. The hospital doctor, Magee, testified that "there was no visible evidence of injury or of anything." The plaintiff's testimony therefore stands alone. In view of the facility of building up a claim for damages in a case of this kind and the difficulty of the defendant refuting it, courts must require moral certainty of the plaintiff's demand. Lutz vs. Martin, No. 7175, Ct. App.

While the plaintiff and her witness Lopez testify as to injury to her leg "all up," and that her knee "rested" upon nails in the flooring, the evidence is that the flooring was only twelve inches from the ground. Her leg could not therefore have gone more than twelve inches below the flooring and that would not reach the knee. But this Court has always been conservative in inflicting damages for mere scratches or contusions. In the case of Boutin vs. Bradley, 1 La. App. 260, where the plaintiff was bruised about the hips and remained in bed several days this Court allowed $150. Also Nash vs. Canal & C. R. Co., 52 La. Ann. 1199, 27 So. 661, $100 for injuries not severe.

It is therefore ordered that judgment herein be reducd from three hundred dollars to one hundred fifty dollars, and as thus amended, that it be affirmed, the defendant to pay all costs.