**TAMBRELLO et al. v. PRADOS et al. \***
No. 17075.

Court of Appeal of Louisiana. Orleans.
Jan. 23, 1939.

Gill & Simon, of New Orleans, for appellants.

\*Rehearing denied Feb. 27, 1939.

George P. Nosacka, of New Orleans, for appellees.

McCALEB, Judge.

Mr. and Mrs. John B. Frisard brought this suit for recovery of the damages they sustained as a result of a certain accident befalling the latter on the property of the defendants, No. 3822 D'Hemecourt St. in the City of New Orleans, which was being occupied by plaintiffs under a verbal lease.

They allege that on June 11, 1937, at about 9 a. m., while Mrs. Frisard was walking upon the rear porch of the house, one of the floor boards thereof collapsed under her weight due to its decayed and dilapidated condition; that, as a result thereof, she lost her balance and fell, sustaining severe personal injuries consisting of a sprain of her right ankle and lacerations and contusions of both legs. Plaintiffs further aver that Mrs. Frisard was incapacitated because of her injuries from the date of the accident to the filing of the petition (November 6, 1937); that her left leg became infected with erysipelas; that she is entitled to recover for her injuries the sum of $2,000, and that her husband, as head and master of the community, should have judgment in the sum of $107.-47 representing the medical expenses and drug bills he incurred as a consequence of the accident.

The defendants appeared and admitted that they are the co-owners of the leased premises and that the plaintiffs were the lawful occupants thereof. They denied, however, that Mrs. Frisard was injured in the manner set forth in the petition or that the premises were in an unsafe condition, averring that, approximately two or three days before the accident is alleged to have happened, a carpenter in their employ repaired the rear porch of the house and that the same was in excellent condition.

The case was tried on these issues and the district judge, after hearing the evidence, dismissed plaintiffs' suit. They have appealed.

The undisputed facts of the case show that shortly prior to June 7, 1937, plaintiffs' daughter and son-in-law visited the property in question and made an agreement to lease it. At that time the premises were in need of repair and Mrs. Ferrantelli, one of the defendants, promised that the house would be placed in first class

condition. Accordingly, the latter employed a negro carpenter named Ray who, in addition to doing certain work on the interior of the house, repaired the flooring of the rear porch. On June 7, 1937, plaintiffs moved into the premises. Four days later on June 11th, Mrs. Frisard sustained certain injuries when she fell upon the back porch.

The sole issue in the case is one of fact, i. e., did Mrs. Frisard receive her injuries in the manner alleged in the petition?

Mrs. Frisard is a very obese woman weighing between 250 and 300 pounds. She stated on the witness stand that on the day of the accident she had gone through the rear door of the premises onto the porch and, while walking thereon, one of the floor boards collapsed; that her left leg went through the hole in the board to a point past her knee and that her right leg buckled under her weight, causing her to sprain her right ankle. She further declares that, in her distress, she called for help; that her daughter and son-in-law came immediately to her assistance; that, due to her great weight, it was impossible for them to remove her leg from the hole and that her son-in-law sawed out several floor boards in order to extricate her from her position. She also asserts that, as a result of the accident, she could not walk for a period of approximately two or three weeks thereafter and that later she developed erysipelas in her left leg. Her testimony is fully corroborated by that of her son-in-law and daughter, Mr. and Mrs. Edward L. Jones, and a negro house boy named George Felton who arrived on the scene a few moments after the occurrence.

Mr. Frisard was not present when the accident happened but arrived shortly thereafter. He says that Mrs. Ferrantelli, one of the defendants (who had been summoned to the house by his daughter), was shown the part of the porch where Mrs. Frisard had fallen and that she remarked that the colored carpenter employed by her did not fix it properly. He further states that he and his son-in-law agreed with Mrs. Ferrantelli to make the necessary repairs to the porch and deduct the cost thereof from the monthly rent.

In an effort to rebut the evidence submitted by the plaintiffs, the defendants produced three witnesses—Mrs. Ferrantelli, Francis Griffith and John Ray.

Mrs. Ferrantelli stated that shortly before noon on June 11, 1937, Mrs. Jones, plaintiffs' daughter, informed her by telephone of the happening of the accident; that she immediately went to the leased premises accompanied by Mr. Griffith; that she saw Mrs. Frisard sitting in the kitchen and that the latter told her she had fallen through the porch. She further says that she examined the porch and that someone had removed all of the boarding therefrom so that it was practically uncovered. Her testimony with respect to the condition of the porch shortly after the occurrence is corroborated by the evidence of Mr. Griffith.

John Ray, the defendants' carpenter, testifies that on the day of the accident, Mrs. Ferrantelli instructed him to go to the leased premises and repair the porch; that, in accordance with her command, he visited the property but that Mr. Jones, plaintiffs' son-in-law, told him not to repair it as he (Jones) intended to do the necessary work. He further declares that he viewed the porch and that some of the boarding had been removed.

■ After scrutinizing all of the testimony adduced in the case, we are convinced that the evidence submitted by plaintiffs is genuine and that Mrs. Frisard fell through the flooring of the porch in the manner she describes. To hold in favor of the defendants, we would be compelled to resolve that the story told by plaintiffs and their witnesses is spurious and was concocted for the sole purpose of mulcting the defendants in damages. The record does not warrant such a conclusion. On the contrary, the porch was admittedly unsafe shortly before the plaintiffs occupied the house and the defendants agreed to have it put in good condition. While it is true that defendants' carpenter patched the decayed portions of it, his work was plainly defective since the flooring as installed by him was not strong enough to withstand the weight of Mrs. Frisard.

■ Counsel for defendants remind us of the often stated rule that the appellate court will not disturb the finding of a trial court on questions of fact unless manifestly erroneous. The principle may not be invoked here because we are convinced that the judge was clearly wrong in his appreciation of the facts contained in this transcript.

■ Being of the opinion that the defendants are liable, we next consider the

700

quantum of damages to be awarded. The injuries sustained by Mrs. Frisard are described by her physician, Dr. E. F. Salernò, as consisting of a sprained right ankle with slight ecchymosis and that the patient complained of pains involving her right hip and the back of her leg. He states that she was under his care for a period of three weeks after the accident. Mrs. Frisard was also treated by Dr. George Barnes who did not appear in court. However, it was admitted by the defendants that, if he had been present, he would have testified that he treated Mrs. Frisard for a condition of ecchymosis of the leg and that, while he could not have stated positively whether that condition was due to the accident, he would have opined that it would be possible for such a result to follow.

Viewing the medical testimony as a whole, we feel that the only injury suffered by Mrs. Frisard, which may be said to have causal connection with the accident, is the sprained ankle and the slight ecchymosis accompanying it and that the condition of her left leg, for which she was later treated by Dr. Barnes, was probably attributable to other causes. A judgment of $300 will fairly compensate her for her actionable hurts. See Becker v. Illinois Central R. Co., 2 La.App. 745, and Chutz v. Bergeron, La.App., 147 So. 112.

Mr. Frisard has asked for $107.47 for expenses incurred by him as a result of the accident. The proof shows that Dr. Salerno's bill was $25. Recovery of this item will be permitted. Plaintiffs also submitted a bill for drugs purchased by them in October 1937 which was sometime after Mrs. Frisard had been discharged by Dr. Salerno. No allowance can be made for that expense.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Mrs. Mary Tambrello, wife of John B. Frisard, and against the defendants, Mrs. Louise Prados, widow by first marriage of Anthony Ferrantelli, and divorced wife by second marriage of Stephen J. Thorwegen, Arthur Joseph Ferrantelli, Mrs. Angelina Ferrantelli, wife of John B. Slemmer, and Mrs. Louise Prados Ferrantelli Thorwegen, in her capacity as the duly qualified tutrix of the minors, Joseph Sylvester Ferrantelli and Marie Louise Ferrantelli, in solido, for the full sum of $300 and that there be further judgment herein in favor of John B. Frisard and against all of the above named defendants in solido for the full sum of $25 with legal interest on both of the amounts herein awarded from date of judicial demand until paid and for all costs.

Reversed.